OPINION OF THE COURT
Per Curiam.
Judgment of conviction rendered December 12, 2001 affirmed.
The 11 defendants-appellants herein, self-proclaimed anarchists, were convicted after a nonjury trial of loitering (Penal Law § 240.35 [4])[1] upon proof, now unchallenged on either sufficiency or weight of the evidence grounds, that they and others gathered next to each other “as a group” and covered their faces with bandanas while shouting epithets and political slogans during a May Day demonstration in Union Square Park.
Defendants’ constitutional challenges to the antimask provisions of Penal Law § 240.35 (4) are lacking in merit. The statute, “aimed at deterring violence and facilitating the apprehension of wrongdoers” (Church of Am. Knights of Ku Klux Klan v Kerik, 356 F3d 197, 205 [2d Cir 2004]),[2] neither infringes *41 upon any First Amendment right to anonymous speech nor constitutes impermissible viewpoint discrimination. As the Second Circuit noted in rejecting similar First Amendment claims in Kerik, no federal appeals court has ever “held that freedom of association or the right to engage in anonymous speech entails a right to conceal one’s appearance in a public demonstration.” (356 F3d at 209.) Since, as Kerik makes clear, enforcement of the antimask law did not implicate defendants’ First Amendment rights, defendants’ constitutional overbreadth and vagueness arguments, each premised upon First Amendment doctrine, necessarily must fail as well.
Nor did the trial court improperly shift the burden of proof from the People to defendants on any recognized element of the loitering offense charged. To the extent that Criminal Court (Gregory Carro, J.), in denying defendants’ pretrial dismissal motion, purported to “save” the antimask statute from a perceived “constitutional infirmity” by construing the statute to prohibit the collective wearing of masks “for no legitimate purpose” (People v Aboaf, 187 Misc 2d 173, 184 [2001] [internal quotation marks omitted]), that ruling is at odds with the Second Circuit’s subsequent decision in Kerik upholding the constitutionality of the statute as written. Inasmuch as proof of the “legitimacy” of the reason(s) for the defendant’s mask wearing was not an essential element of the loitering offense as defined in the Penal Law, the trial court’s in limine ruling, which allowed defendants to introduce evidence as to the nonstatutory “legitimate purpose” defense carved out by the motion court, did not ease the People’s trial burden or cause defendants any discernible prejudice.
Finally, the underlying informations were jurisdictionally valid even though they did not allege the inapplicability of the “masquerade party or like entertainment” exemption contained in Penal Law § 240.35 (4). “[T]he requirements of common sense and reasonable pleading” (People v Devinny, 227 NY 397, 401 [1919]) warrant the treatment of the masquerade party exemption as a proviso to be raised as a defense by a defendant, rather than as an exception to be pleaded and proved by the People. Unlike a true exception, the statutory language excludes masquerade parties and similar entertainment events conditionally, not absolutely (see McKinney’s Cons Laws of NY, Book 1, Statutes § 211), and only through reference to municipal regula *42 tions found outside the statute (see People v Kohut, 30 NY2d 183, 187 [1972]).
Suarez, EJ., Davis and Schoenfeld, JJ., concur.

. The statute provides that a person is guilty of “loitering when he or she . . . [b]eing masked or in any [way] disguised by unusual or unnatural attire or facial alteration, loiters, remains or congregates in a public place with other persons so masked or disguised . . . except that such conduct is not unlawful when it occurs in connection with a masquerade party or like entertainment if, when such entertainment is held in a city which has promulgated regulations in connection with such affairs, permission is first obtained from the police or other appropriate authorities.”

. That enforcement of the antimask law may have effectively served to further these salutary crime prevention goals in this case is supported by evidence that defendants, upon arrest, were in possession of such items as a hammer, ink markers, paint-filled balloons, and metal “slingshot”-type “cans” used for “hurlfing]” such balloons.